UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE ESTATE OF SCOTT SCHULTZ,
WILLIAM SCHULTZ and LYNNE
SCHULTZ,

    Plaintiffs,

v.

BOARD OF REGENTS OF THE
UNIVERSITY SYSTEM OF GEORGIA
By and on behalf of GEORGIA
INSTITUTE OF TECHNOLOGY,
and TYLER AUSTIN BECK,

    Defendants.

Civil Action File No.
_____

Jury Trial Demanded

## COMPLAINT FOR WRONGFUL DEATH

### INTRODUCTION

The parents of Scott Schultz seek justice for the death of their son, Scott Schultz, who was shot on September 16, 2017, by an undertrained Georgia Tech police officer and died on September 17, 2017.

This action is brought pursuant to 42 U.S.C. § 1983 for the violation of Scott Schultz' right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments. This federal claim is brought against Tyler Beck for his use of excessive force. Federal claims are also brought

1

under the Americans with Disabilities Act – 42 U.S.C. § 12101 et seq., and § 504 of the Rehabilitation Act of 1973 – 29 U.S.C. § 794, for the failure of the Georgia Institute of Technology and the Board of Regents of the University System of Georgia to properly accommodate students having a mental health type of medical crisis and develop adequate policies, including adequate officer training, for taking students who are in a mental health/medical crisis into custody.

## JURISDICTION AND VENUE

1. This action arises under the authority vested in the Court by virtue of 42 U.S.C. § 1983, 1988, and 28 U.S.C. § 1313 and 1343(3). The conduct giving rise to this action occurred on the Atlanta, Georgia campus of the Georgia Institute of Technology in Fulton County, Georgia, and venue is thereby proper in the Atlanta Division of the Northern District of Georgia.

## PARTIES

2. William Schultz is the father of Scott Schultz; he is an adult citizen of the United States of America and the State of Georgia.

3. Lynn Schultz is the mother of Scott Schultz; she is an adult citizen of the United States of America and the State of South Carolina.

4. William Schultz and Lynn Schultz are the holders of the right under Georgia law to bring this action arising from the wrongful death of their son.

5. The Estate of Scott Schultz is represented by William Schultz, having been appointed as the Administrator of the Estate by the Probate Court of Gwinnett County, Georgia.  The Estate of Scott Schultz holds the right under Georgia law to bring this action to seek relief for the injuries and losses inflicted upon Scott Schultz by the Defendants in advance of Scott Schultz's death, along with other proper relief.

6. The Defendant, Board of Regents of the University of Georgia State of Georgia by and on behalf of Georgia Institute of Technology, is a Georgia state agency located at 244 Washington Street, S.W., Atlanta, Georgia 30334, hereinafter "Georgia Tech."   The Board of Regents and Georgia Tech are subject to suit by virtue of Title II of the Americans with Disabilities Act.  The Board of Regents, along with Georgia Tech, is a public entity which receives financial assistance from the government of the United States of America and is subject to the provisions of Section 504 of the Rehabilitation Act, 29 U.S.C. 794, and  42 U.S.C. 2000d-7.

7. Georgia Tech is a general academic teaching institution and is a unit of the University System of Georgia, which is governed by the Board of Regents of the University System of Georgia.

8. Tyler Austin Beck is an adult citizen of the State of Georgia who, at all times pertinent to this suit, was employed by Georgia Tech as a law enforcement officer and acted under color of law for purposes of 42 U.S.C. 1983.  He is sued herein in his individual capacity.

## FACTUAL STATEMENT

9.  Scott Schultz was born in 1995.

10.  He was shot by Tyler Austin Beck on September 16, 2017.

11.  On the day that he was shot, Schultz was enrolled as a student at Georgia Tech.

12.  Schultz had received a scholarship to attend Georgia Tech and initially enrolled in the summer of 2014.

13.  Schultz had attained a grade point average of 3.9 as of the time of his death.

14.  Schultz was majoring in engineering.

15.  Like many other Georgia Tech students, Scott Schultz suffered from mental health issues.

16. Those mental health issues included, but were not limited to, clinical depression.

17. While a student, Schultz had sought mental health services from Georgia Tech.

18. On the evening of September 16, 2017, Scott Schultz placed a call to the campus emergency call number, "911."

19. Scott Schultz was experiencing a mental breakdown.

20. He reported that there was a suspicious person on campus, at the West Village section of the Georgia Tech campus.

21. He said that the person might be "drunk, or something."

22. He said that the person was "walking kind of slow."

23. He said that the person was walking on the sidewalk.

24. Schultz described the person as a white male with long blonde hair dressed in a white T-shirt and jeans.

25. He was asked to identify himself to the 911 dispatcher. He stated that he was Scott Schultz.

26. Approximately four Georgia Tech police officers initially responded to the location described by Scott Schultz in his 911 call.

27. Following their arrival, the person who attracted their attention was Scott Schultz.

28. Schultz's appearance corresponded to the description he provided to the 911 dispatcher – he was a white male with long blonde hair dressed in a white T-shirt and jeans.

29. Each of the officers saw that Schultz was walking slowly.

30. Each of the officers saw that Schultz was alone.

31. Each of the officers saw that Schultz' arms were at his side.

32. Officers drew their handguns and pointed them at Schultz.

33. Schultz was barefoot.

34. Schultz was verbally calm.

35. Schultz did not state any threat to either of the officers.

36. Schultz did not move his arms in a violent or aggressive manner.

37. One officer shouted at Schultz, "Speak."

38. Schultz did not immediately respond.

39. One officer yelled at Schultz, asking for his name,

40. Schultz did not immediately respond.

41. Each of the officers was twenty or more feet in distance from Schultz's position.  As Schultz moved slowly, officers adjusted their position to keep a safe distance from Schultz.

42. Schultz paused and turned the position of his body so that he was facing several of the officers.

43. Schultz slowly walked a few steps in the direction of the three officers.

44. One of the three officers told Schultz not to move.

45. At the time that he was told not to move, Schultz' arms remained at his side.

46. At the time that he was told not to move, Schultz was facing in the direction of the three officers.

47. Each of the officers observed that Schultz was not acting rationally and was not responding rationally to officer commands.

48. Schultz's actions as of the time that he was told not to move were consistent with a person who is experiencing a mental health crisis and were actions which a reasonably trained law enforcement officer would recognize as such.

49. One or more of the four officers had received training designed to equip police officers with the observational skills to judge when a subject whom they are confronting is undergoing a mental health crisis or is otherwise engaging in behavior reflective of mental illness.

50. The specialized training, Crisis Intervention Techniques, trains an officer in methods to de-escalate a potentially dangerous situation when

dealing with a person undergoing a mental health crisis or engaging in behavior reflective of mental illness.

51. Officer Beck was not one of those officers.

52. Several of the officers at the scene remained calm and followed standard de-escalation techniques without initiating physical force directed at Scott Schultz.

53. Unlike the other officers, Officer Beck did not de-escalate and instead used physical force.

54. Immediately after Schultz was told not to move by one of his fellow officers, Beck shot Schultz – firing his weapon one time.

55. Beck was the only officer to fire his weapon at Schultz.

56. At the time that Beck fired his weapon, Schultz had taken no physical or verbal action which constituted a threat to the physical safety of Beck or the other officers.

57. At the time that Beck fired his weapon, Schultz had taken no physical or verbal action which constituted a threat to the physical safety of another person.

58. At the time that Beck fired his weapon, according to news reporting at the time, the majority of Georgia Tech's police officers had not completed the Crisis Intervention training.

59. The steps taken by Georgia Tech to train its officers in Crisis Intervention Techniques were clearly insufficient to prevent Schultz's death.

60. The failure to properly train its police officers in Crisis Intervention Techniques was the result of inaction and decisional failures which occurred well in advance of Schultz' death.

61. The need for such training was well known within the law enforcement community.

62. Studies published years in advance of Schultz's death estimated that "at least half" of all fatal police encounters involve persons with psychiatric disorders.  Kelley Bouchard, "*Across Nation, Unsettling Acceptance When Mentally Ill in Crisis are Killed*," Portland Press Herald, Dec. 9, 2012.

63. Once he was shot, Schultz did not die immediately.

64. Schultz endured pain and emotional harm in anticipation of his own death.

65. The death certificate declared, correctly, that Schultz's death was caused by a gunshot wound to his torso.

66. Schultz was pronounced dead just after midnight on the morning of September 17, 2017.

67. Schultz's death was the result of Georgia Tech's and the State of Georgia's failure over time to properly train their personnel to act in such a way as to prevent the exclusion of persons such as Scott Schultz from the safety to which all students were entitled on the campus of Georgia Tech.

68. As of the preparation of this Complaint, Plaintiffs have, through their counsel, repeatedly sought, without success, to obtain the investigative records of Georgia Tech, of the Georgia Bureau of Investigation, of the City of Atlanta, and the Office of the District Attorney of Fulton County, Georgia.  The records sought include, but are not limited to, witness statements, photographic and auditory recordings, still photos, ballistics evidence, and physical evidence.  None of those records have been produced.

69. As a result of the denial of access to the information contained within those files, Plaintiffs anticipate that an Amendment to this Complaint may be appropriate in the future.

## CAUSES OF ACTION

70. The actions of Tyler Austin Beck violated the constitutional right of Scott Schultz to be free from unreasonable seizures as established by the Fourth Amendment to the Constitution of the United States.  Beck's actions not only caused physical harm to Scott Schultz, they killed him.

71. The Board Of Regents Of The University System Of Georgia By And On Behalf Of Georgia Institute Of Technology is and has been at all relevant times the recipient of federal financial assistance. Part of that financial assistance has been used to fund the operations, construction and/or maintenance of Georgia Tech. By its actions or inactions, Georgia Tech denied Scott Schultz the equal access to the benefit of its services, programs or activities in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. 794 and the regulations promulgated thereto and in violation of the Americans with Disabilities Act and such denial is actionable through Title II of said Act.

## PRAYER FOR RELIEF

For and upon the foregoing, Plaintiffs pray that this Court:

a. Afford them a trial by jury as to all claims and issues for which a jury is available.

b. Award them all damages available to the Estate of Scott Schultz which are permitted by the laws of the State of Georgia and the laws of the United States – damages from each of the Defendants.

c. Award William Schultz and Lynne Schultz all damages which are available as a result of Scott Schultz's wrongful death – damages from each of the Defendants.

d. Award the Plaintiffs such costs and attorneys' fees as are available by operation of the laws of the State of Georgia and of the United States.

So submitted on this the 11th day of September, 2019.

**G. Brian Spears**
Georgia Bar No. 670112
Attorney for Plaintiffs
G. BRIAN SPEARS, P.C.
1126 Ponce de Leon Ave., N.E.
Atlanta, Georgia 30306
Phone: (404) 872-7086
Email: Bspears@mindspring.com


**Chris Stewart**
Georgia Bar No. 142289
Attorney for Plaintiffs
Stewart Trial Attorneys
55 Ivan Allen Blvd., NW, Suite 700
Atlanta, GA 30308
(844) 874-2500 main
(470) 344-6719 fax
Email:  cstewart@stewarttrial.com