IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| THE ESTATE OF SCOUT SCHULTZ, WILLIAM SCHULTZ and LYNNE SCHULTZ, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CIVIL ACTION FILE NO. |
| BOARD OF REGENTS OF THE UNIVERSITY OF GEORGIA by and on behalf of GEORGIA INSTITUTE OF TECHNOLOGY and TYLER AUSTIN BECK, | ) ) ) ) ) ) | 1:19-cv-04083-JPB |
| Defendants. | ) ) | |

**PLAINTIFFS' MOTION TO DISREGARD MATERIALS
EXTRINSIC TO THE COMPLAINT FILED WITH DEFENDANTS'
MOTION TO DISMISS AND BRIEF IN SUPPORT**

Plaintiffs Move the Court for an Order ruling that the materials filed by the

Defendants as exhibits to their Motion to Dismiss will not to be considered in

adjudicating the sufficiency of Plaintiffs' Complaint.

**THE DEFENDANTS WITHHELD FROM PLAINTIFFS THE
VIDEOS UPON WHICH DEFENDANTS NOW SEEK DISMISSAL**

Almost without exception, the materials appended to the Defendant's

12(b)(6) motion are materials which the Defendants previously withheld from

Plaintiffs.  See, Complaint, D.E. 1, ¶ 68.  Just over a year after Scout Schultz's death, the Schultz family requested on September 21, 2018, that the Office of Legal Affairs at Georgia Tech permit them to have copies of, *inter alia*, all "tape recordings, photographs, or any and all other items of physical evidence collected and maintained within the case investigative file."[1]   On October 2, 2018, Georgia Tech rejected that request, [2] with the exception of two redacted "publicly available incident reports," neither of which made any reference to video or other recordings.  Georgia Tech rejected Schultz's request for video recordings, insisting that disclosure of these materials was foreclosed and "exempted" by operation of the *'pending investigation or prosecution'* provisions of the Georgia Open Records Act.  O.C.G.A. 50-18-72(a)(4).

On December 7, 2018, a written request for recordings pertaining to the Schultz shooting was sent on behalf of the Schultz family to the Georgia Tech Office of Legal Affairs.[3]  On December 14, 2018, Georgia Tech rejected the Shultz' request through an email sent to counsel for the Schultz' family.[4]

---

[1]  Attached hereto as Exhibit 1 is a true and correct copy of Spears' letter to the Office of Legal Affairs dated September 21, 2018.

[2]  Attached hereto as Exhibit 2 is a true and correct copy of Georgia Tech's response to

[3]  Attached hereto as Exhibit 3 is a copy of the December 7, 2018, request.

[4]  Attached hereto as Exhibit 4 is a copy of the December 14, 2018, email.

On June 13, 2019, a third written request for "tape recordings, photographs" and "documentary materials" was delivered to the Georgia Tech Office of Legal Affairs.[5]  On June 21, 2019, the Schultz' request was again rejected by Georgia Tech.[6]

None of the materials proffered by Defendants with their Motion to Dismiss were ever provided by Defendants to Plaintiffs prior to December 9, 2019.  Nevertheless, Defendants now demand entry of judgment in their favor on the basis of these materials and upon their own description, characterization and summary of the content of the materials.  Springing these materials on Plaintiffs after consistently refusing to produce them results in a marked unfairness against Plaintiffs and should require extreme caution on the part of the Court in considering the entirety of Defendants' Motion.

Plaintiffs seek to litigate their claims in accordance with the Federal Rules of Civil Procedure.  Defendants' motion to dismiss is contrary to those rules and the fairness which those rules are designed to ensure.

Defendants chose to withhold from Plaintiffs the entirety of the materials supplied by them to the court, and then accuse Plaintiffs of "misstat[ing] or

---

[5]  Attached hereto as Exhibit 5 is a copy of the June 13, 2019, letter.
[6]  Attached hereto as Exhibit 6 is a copy of the June 21, 2019, letter.

entirely omit[ting], several key facts in Scout's 911 call and encounter with GTPD officers."  In so doing, Defendants condemn Plaintiffs for not describing how the events unfolded in Defendants' favor, and accuse Plaintiffs of omitting details from their complaint over which Defendants maintained exclusive control.

## COURT MAY NOT RELY UPON EXTRINSIC MATERIALS FILED WITH DEFENDANTS' MOTION TO DISMISS

Plaintiffs object to any reliance upon the declarations and accompanying exhibits which have been filed by Defendants, to wit:  D.E. 11-2 through D.E. 11-5, which have been described by Defendants as Exhibits A-D.

### Summary of Controlling Eleventh Circuit Law

The issue presented is whether these extrinsic materials are 'incorporated by reference' by the Plaintiffs' Complaint.  If these materials fail to meet each of the criteria established by the Eleventh Circuit, they must be excluded.

"Under the doctrine of incorporation by reference, [the court] may … consider documents attached to the motion to dismiss if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity." *Hi-Tech Pharm., Inc., v. HBS Int'l Corp.,* 910 F.3d 1186, 1189 (11th Cir. 2018)(where a complaint alleged that a marketing label violated the Georgia Uniform Deceptive Trade Practices Act, the court considered the undisputed marketing label attached to the motion to dismiss); see, also, *Booth v. City of Roswell*, 754 F.App'x

834, 836-37 (11th Cir. 2018)(where plaintiff's complaint alleging employment discrimination referred to but did not file his EEOC charge, district court was permitted to consider the document which constituted the charge in adjudicating whether the complaint, as filed with the court, was reasonably related to the EEOC charge).

A district court may consider an extrinsic document when adjudicating a defendant's Rule 12(b)(6) motion if the complaint references the document and if other criteria are met. *In Fin. Sec. Assurance, Inc., v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007), the court held that district courts should "not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss…"  The Court went on to explain that there is an exception to this rule "in cases in which [1] a plaintiff refers to a document in its complaint, [2] the document is central to its claim, [3] its contents are not in dispute, and [4] the defendant attaches the document to its motion to dismiss." *Id*. See also *Legacy Entertainment Group, LLC v. Endemol USA, Inc.,* 2015 U.S. Dist. LEXIS 191803 (M.D.Fla. Oct 1, 2015)("In ruling on a motion to dismiss, a court may only consider extrinsic evidence attached to the motion when that evidence has been 'incorporated by reference' into the pleading.  In other words, "if the documents' contents are alleged in a complaint and no party questions those contents, [the Court] may consider such a document provided it meets the

centrality requirement."  (internal citations omitted)(citing *Day v. Taylor*, 400 F3d 1272, 1276 (11th Cir. 2005).

A document is not "central" to a plaintiff's complaint merely because it may or may not contain relevant information or facts.  *Adamson v. De Poorter,* No. 06-15941, 2007 U.S.App. LEXIS 23577, at *1 (11th Cir. Oct.4, 2007).  In *Adamson* the Eleventh Circuit held the district court erred by dismissing a prisoner's complaint by relying upon defendant declarations filed with their motion to dismiss.  Finding that defendants' declarations were not 'central' to Adamson's complaint, the court explained:

> "A document is not 'central' merely because it is directly responsive to a factual allegation. We explained in *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271 (11th Cir. 1999) that the foundation for a defendant's ability to introduce 'central' documents at the motion to dismiss stage "is that when a plaintiff files a complaint based on a document but fails to attach that document to the complaint, the defendant may so attach the document, and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint, is considered part of the pleadings and thus may be reviewed at the pleading stage without converting the motion into one for summary judgment."  *Bryant*, 187 F.3d at 1280, n.16."

*Adamson v. De Poorter*, at *7-8.

The Fourth Circuit uses reasoning similar to the Eleventh Circuit to control when a defendant may attach a document to its motion to dismiss despite the general rule that extrinsic evidence outside of the contents of the complaint should not be considered.  The Fourth Circuit has explained that:

> "The rationale underlying this exception is that the primary problem
> raised by looking to documents outside the complaint – lack of notice to
> the plaintiff – is dissipated "[w]here plaintiff has actual notice … and has
> relied upon these documents in framing the complaint."  What the rule
> seeks to prevent is the situation in which a plaintiff is able to maintain a
> claim of fraud by extracting an isolated statement from a document and
> placing it in the complaint, even though if the statement were examined in
> the full context of the document, it would be clear that the statement was
> not fraudulent."

*Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004);

accord, *Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir.1999).

Even when the court is allowed to consider extrinsic materials, it

nevertheless must do so under the controlling standard of Rule 12(b)(6) – the

extrinsic materials must be viewed in the light most favorable to the plaintiffs

and all reasonable inferences from them must be drawn in the plaintiff's favor.

*Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607-608 (4th Cir. 2015)(though

district court could take judicial notice of documents filed  with SEC, construing

them as establishing specific fact was error because documents were not

definitive on the issue); *Ouwinga v. Benistar, 419 Plan Servs., Inc.*, 694 F.3d 783,

796-797 (6th Cir. 2012)(documents integral to complaint may be relied upon in

deciding motion to dismiss, but it must also be clear that there are no disputed

fact issues regarding relevance of documents; district court erred in relying on

disclaimers referenced in complaint when opposing parties challenged their

scope, validity and enforceability).

**Applying Controlling Law Requires Disregard of Exhibits**

Plaintiffs' objections to the extrinsic materials attached to Defendants' Motion to Dismiss are discussed individually below:

### 1. Defendants' "Chronological Summary"

The first issue is whether "Exhibit D," described by Defendants as a "chronological summary of the audio and video record," D.E. 11-5, is a document which can be incorporated into Plaintiffs' complaint when the document cannot be considered central to Plaintiffs' claim and its authenticity is disputed.

Plaintiffs object to any consideration of the Defendants' "summary" because it fails to meet any of the several criteria required by the Eleventh Circuit for its inclusion into the complaint. Plaintiffs never referred to or relied upon this summary in preparing the complaint; the Plaintiffs are not suing over the meaning of terms of the summary, they are suing over the actions of Officer Beck (and Officer Beck is never even mentioned in Defendants' summary). This document is not in any respect 'central' to Plaintiffs' complaint. Plaintiffs have never previously had the remotest idea of the existence of such a summary, let alone incorporate this summary into their complaint. The summary contains an incredibly long and detailed recitation of facts without making any effort to

identify the person or persons composing the statements being made in the summary itself.

The authenticity of this document is not established in any respect and Plaintiffs challenge its foundation and authenticity.  Without even explaining the source of their information, or being subjected to cross examination, the author (or author(s)) of the "summary" document:   a) purports to tell the court that the caller in the 911 call is Scout Schultz, and goes on to express their opinion that Scout spoke "with no apparent distress;"    b) they fail to provide an objective account of  the events depicted on videos or heard on audio recordings, and instead injects argumentative and clearly-biased interpretations of those events – for example, the author of the summary  complains to the court that Scout purportedly did not tell the dispatcher that Scout was describing themselves during the 911 call,   c) they identify names of streets surrounding the location depicted in the videos without providing any foundation, d) they inject their own opinions into the narrative by, for example, describing Scout as having walked "with apparent deliberate movement" at an officer and express the dramatic opinion that Scout "back[ed] the officer down the sidewalk," e) they consistently express their own subjective opinions as to what the videos purport to reflect by, for example, declaring that at 11:24:02 "Scout *appears* to shout something again, and now turns to their right and advances again *with apparent*

*deliberate speed…*"   (Whether Scout "*appeared*" to shout or moved with "*deliberate speed*" is not an objective transcription of the facts depicted in the video; these are statements of subjective opinion.)

From the standpoint of being a document that can be relied upon by the court on a 12(b)(6) motion - this "summary" is not a document which merely "speaks for itself;" instead it is a blatantly biased and argumentative account. Throughout Defendants' Brief they rely upon the statements made in the summary and, in doing so, direct the court to "See, Trammer Decl.Att. 1." Yet Mr. Trammer does not claim authorship of this summary and does not even provide any information as to when or by whom said summary was created, nor any information as to the methods used to create it. Just who authored the summary remains a mystery.  Even if the summary were submitted to the court in the form of a declaration, seeking to rebut the factual allegations of plaintiffs' complaint, it cannot be considered.  As the Court explained in *Henegar v. Georgia Correctional Health, LLC.*, U.S.D.C., N.D.Ga., Civil Action File No. 4:18-cv-0192HLM, Dec. 6, 2018, at D.E. 68, p. 61, when the State of Georgia defendants (represented there by the office of the attorney general) proffered a witness declaration, such a declaration of fact presented to rebut allegations in a complaint "cannot [be considered] in connection with a Rule 12(b)(6) Motion to dismiss for failure to state a claim."  There is simply no Eleventh Circuit

authority upon which to permit this court to incorporate this document into the allegations of Plaintiff's complaint for purposes of adjudicating Defendants' 12(b)(6) Motion to Dismiss.

## 2.  Video by Civilians

There are two civilian witness videos submitted by Defendants. According to Frank Trammer's declaration, D.E. 11-2, there are two "MP4 video files:  Georgia Tech Police Shooting (Live Leak FULL) 9-17-17; and Georgia Tech Shooting (Live Leak Clear View) 9-17-2017."  Neither one can be considered by the Court in adjudicating Defendants' Motion to Dismiss for at least the following reasons:

There is absolutely no reference to either video anywhere in the complaint. Neither video was ever supplied to Plaintiffs in response to their pre-litigation document requests to Defendants.  Therefore, the videos fail to satisfy the first criteria required for their incorporation by reference.  *Hi-Tech Pharm., Inc.,* supra.

The videos fail to satisfy the second criteria.  Neither video is 'central' to the complaint.  A document [including a video] is not "central" to a complaint simply by virtue of it containing or presenting evidence or information which may ultimately be relevant to the issues presented by this litigation.  *Adamson v. De Poorter,* supra, at *7, 8.

Defendants' argument for inclusion of these two videos [along with the five "security videos" separately submitted, which are discussed below] is identical to that made by police officers in S*lippi-Mensha v. Mills, et.al.*, 2016 WL 4820617 (U.S.D.C. N.J., 2016). After a motorist filed her complaint alleging officer misconduct during the course of and following her arrest, the Defendant officers filed a 12(b)(6) motion to dismiss and attached dashboard video footage of the traffic stop to demonstrate that they acted properly, arguing for consideration of the video because the circumstances shown in the video were purportedly central to complaint.  The court refused to consider the video at the 12 (b)(6) stage.  Noting that the Plaintiff's complaint did not cite to, refer to, or attach the video footage of the traffic stop, the court reasoned that "[s]imply because a video that captured the events complained of in the complaint exists does not transform that video into a "document" upon which the complaint is based." *Id.*, *3.  This reasoning applies to this case, to wit:  the videos attached to Defendants' Motion to Dismiss are not "central" to the complaint simply because the videos purportedly capture events described in the Schultz' complaint.

These videos also fail to enjoy the characteristic of "undisputed authenticity."  Although Trammer opines in his declaration that these were "taken from the Eighth Street Apartments and uploaded to the website liveleak.com," Trammer's statements fall far short of what is required to demonstrate

12

'undisputed authenticity.'   The admissibility of videotapes raises a range of recurring evidentiary issues including laying a proper foundation and including voice identification.  A foundation witness should be in a position to testify about whether the videotape is an accurate deposition of the events which are depicted in the video and, if there is an audio component, identify the voice(s).  There is no foundation witness for either of these two civilian video recordings.  The fact that Trammer recounts how his office came into possession of the videos does not authenticate either of them nor does it allow him (or anyone else) to declare whose voice is heard at what point in one of the two video recordings.  Plaintiffs do not concede their authenticity.

There is also a dispute over the relevance of these videos.  The issue presented for Fourth Amendment excessive force purposes is what was the nature and degree of immediate physical threat Scout posed to Officer Beck.  The assessment of that threat must be and is based upon the totality of facts and circumstances that were known to Officer Beck when he used the deadly force. This assessment is the subject of the claim against him and is a purely objective one based upon the facts actually known to the officer.  Plaintiffs affirmatively state in their complaint that the circumstance presented to Officer Beck by Scout's presence did not constitute an actual immediate threat of imminent harm. Not only that - there is nothing contained within the videos that actually depict,

let alone identify, just what Beck or any other officer saw in Scout's hand. The complaint and any materials which the court deems to be property incorporated into the complaint must always be construed in Plaintiffs' favor. Therefore, where, as here Plaintiffs dispute that Beck saw anything in Schultz's hand, let alone a weapon or "instrument" of any kind, and the videos cannot and do not conclusively demonstrate what Beck saw or did not see, then the videos are not yet relevant to Beck's personal decision to use deadly force nor to whether Beck is insulated from liability for killing Scout because of the doctrine of qualified immunity.

These two videos do not meet either of the pre-requisites for their incorporation into Plaintiffs' complaint nor, for that reason, their consideration as a part of Defendants' Motion to Dismiss.

### 3. Ga Tech Security Camera Videos

Mr. Trammer's Declaration identifies five video recordings as "security camera video files." Plaintiffs object to any incorporation of the content of these videos into their complaint when adjudicating Defendants' Motion to Dismiss.

Neither video was referenced in the complaint. There was a good reason for this absence. Even if Plaintiffs had wanted to include one or another of these videos, neither video was made available to them - a circumstance due entirely to Georgia Tech's blanket refusal to provide these video recordings. Therefore,

Defendants fail to meet the first two of the three requisite elements which must be met in order for them to call upon this Court to consider the security videos to adjudicate their Motion to Dismiss.   *Hi-Tech Pharm., Inc., v. HBS Int'l Corp.,* supra.

Although the Defendants declare that their video recordings are to be considered 'part of the pleadings,' and that their 'authenticity cannot be disputed,' D.E. 11-1, p.7, Defendants are in error.  Plaintiffs challenge the authenticity of these video recordings at least unless and until they can depose the persons who reviewed, selected, preserved and produced them, and until Plaintiffs have all of the Georgia Tech video and audio recordings.

Even if Plaintiffs did not challenge the claimed authenticity of the five security videos, there is a more fundamental reason that the videos cannot be relied upon in adjudicating Defendants' Motion to Dismiss.  Plaintiffs dispute that Beck saw anything at all in Scout's hand before Beck fired and dispute that Beck or any other person was in immediate risk of harm from Scout.  There is no video provided which purports to have been shot by Mr. Beck's body camera or from his vantage point.[7]  Instead of supplying  Beck's body cam or other

---

[7]  Defendants fail to provide any explanation for failing to supply these additional videos to the Court.  And, as pointedly, they fail to explain the methodology that they used to selectively identify videos that they supply and exclude the ones that they did not supply.

available dash cam footage, Defendants cherry pick the security camera footage on which they want to rely.   Where, as here, Plaintiffs did not rely on any of Defendants' videos in preparing the Compliant and additionally dispute the factual conclusions to be drawn from those videos, the Court should disallow any consideration of the security videos to adjudicate the Motion to Dismiss. *Howe v. City of Enter.*, 2018 U.S.Dist.LEXIS 158716, (M. D. Ala., September 2018)(denying Defendants' Motion to Dismiss and declining to consider video submitted by defendant police officers where Plaintiff neither referenced the parts of the video relied upon by defendants in his complaint nor relied upon them himself), citing *Brown v. Newton County Sheriff's Office*, 273 F.Supp. 3d 1142 (N.D.Ga. 2017).

For all of their effort, Defendants have not produced any footage that definitely demonstrates what Beck saw [or heard, for that matter] before he fired. Defendants point to one frame of one of the five security videos, claiming that in it "Scout can be seen holding an instrument in their right hand."  D.E. 11-1, p. 10. There are several reasons why a statement such as this cannot be relied upon by the Court.  Defendants do not even attempt to claim that any officer actually saw what may have been in Scout's hand when that image was captured and certainly cannot claim that Beck himself had any knowledge of any kind about its presence.  They cannot do so, in part, because there is absolutely no

identification of any single officer in any document or video supplied by the Defendants.  Pretermitting whether the court may consider Defendants' seven page "summary" narrative of what they claim to be depicted in the files they have supplied the court, there is not one single officer who is identified by name in the entire document.  Defendants ask the Court to imply or assume that **some** officer, whether or not Beck, saw something in Schultz's hand; but to afford that assumption for Defendants, the Court would improperly draw inferences from an image it sees on a video screen against, rather than for, Plaintiffs.  Such is not the analytical approach permitted.

In the end, the only person *whose identity is known* who claims to see an 'instrument' in Schultz' right hand is Defense counsel.  Although it is likely that defense counsel is merely incorporating a portion of the summary description of images from the security videos [D.E. 11-5] when making make this statement, the simple fact is that there is no evidence presented of what person or persons authored that statement.  When making their allegation in their brief, at D.E. 11-1, p. 10, Defendants direct the reader to "See, Trammer Decl.Att. 1."  Yet there is no reference in the Trammer Declaration [nor in either of the other two Declarations supplied by Defendants] to the summary description of D.E. 11-5, nor to who prepared it.

### 4.  The 911 Audio Recording

The next issue presented is whether the 911 audio recording[8] proffered by Defendants is "central to Plaintiffs' claim" for purposes of incorporating those contents into Plaintiff's complaint.

Although the audio call made by Scout prior to his death is referred to in Plaintiffs' complaint, the recording is not central to their claim.  Plaintiffs are not suing the Defendants because of what Scout may or may not have said on a 911 call; they are suing the Defendants because Beck shot and killed their son.

There is no claim in the body of the complaint that the contents of the 911 recording were heard by Officer Beck or, for that matter, any one of the officers on the scene.  There is no reference in the complaint to just what of the statements made by Scout in the 911 call were relayed by a dispatcher to one or another of the officers.  There is certainly no description in the complaint as to what Beck was told by the dispatcher.[9]  When the Defendants describe the statements made on the 911 recording they do so without any reference to what the officers were actually told.  Instead, the Defendants clearly and improperly invite the court to construe the existence of this recording in their favor – and

---

[8]  Plaintiffs' objection encompasses both the recording itself and any purported transcription of the recording.

[9]  Georgia Tech refused to produce any dispatch recordings pertinent to Scout's death.

assume without any support that statements made by Scout not known to Beck can be taken into account in adjudicating whether Beck violated the Fourth Amendment when he killed Scout or whether Beck is shielded by qualified immunity.

### Declarations of Frank Trammer, Jeff Hunnicutt and William Smith

The next issue presented is whether the Declarations of Trammer , Hunnicut and Smith may be introduced by Defendants as "central" to Plaintiffs' claim.

The foundation for a Defendant's ability to introduce documents purportedly 'central' to the Plaintiff's claim at the motion to dismiss stage "is that when a plaintiff files a complaint based on a document but fails to attach that document, the defendant may so attach that document and therefore, the document, as one that could have or rather in fairness should have been attached to the complaint…." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1280, n.16 (11th Cir. 1999).

Neither of these declarations are ones upon which Plaintiffs base their claim.  Neither declaration was referred to in Plaintiffs' complaint.  They did not exist when Scout was killed.  They did not exist when their Complaint was filed. They could not have nor should have been "attached to the complaint."  They were not incorporated into Plaintiffs' complaint and are not 'central' to Plaintiffs'

claim. They cannot be relied upon by the court in adjudicating Defendants'
Motion to Dismiss.

### Defendants' Authorities Do Not Authorize the Court To Consider the Materials Filed With Defendants' Motion to Dismiss

The next issue presented is whether the decisions upon which Defendants
rely to argue that the court may consider their extrinsic materials actually
support their argument.  They do not support Defendants' argument - which is
demonstrated by a concrete review of those decisions.

1. *Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039 (11th Cir. 2015):  This was a False
   Claims Act case brought by Mr. Diaz.   Reversing the District Court's
   dismissal of Plaintiff's claim, the Eleventh Circuit concluded that the district
   court could have included consideration of a document which the Plaintiff
   himself attached to his opposition to *Kaplan*'s motion to dismiss and upon
   which Defendants themselves relied in their motion to dismiss.  By contrast,
   none of the documents or exhibits filed with Defendants' Motion to Dismiss
   were submitted by or relied upon in their Complaint and Plaintiffs have
   demonstrated that the documents, including the 911 audio recording, are not
   central to their claim.

2. *Speaker v. United States HHS CDC & Prevention,* 623 F3d 1371 (11th Cir. 2010):
   Plaintiff Andrew Speaker alleged in his amended complaint that the
   defendants had committed privacy act violations by making unauthorized

disclosures to news media of his identity and medical history through press conferences.  In filing their motion to dismiss, the defendants supplied the court with, among other things, videos of the CDC press conferences on which Speaker relied.  The District Court granted the defendants' motion to dismiss for failure to state a claim and the Eleventh Circuit reversed.   Noting that the materials relied upon by the District Court were not disputed by the plaintiff, the Eleventh Circuit "incorporate[d] their contents to determine" the sufficiency of Speaker's allegations, and to then reverse the District Court. Contrary to the circumstances in *Speaker,* reliance upon the materials submitted by these Defendants is disputed and challenged on a number of grounds.

3. *SFM Holdings Ltd. V. Banc of Am. Secs, LLC*, 600 F.3d 1334 (11th Cir. 2010): This is a case where the specific terms of a document referenced by the Plaintiff in, but not attached to, their Complaint were determinative of Defendants' duties to the Plaintiff.  Plaintiff SFM Holdings ["SFM"] sued Banc of Am Secs. ["BAS"] alleging, in pertinent part, that BAS breached its fiduciary duty to supervise persons making stock market trades on behalf of SFM.  The "account opening documents," to which plaintiff referred in its complaint, specifically declared that BAS "was not an adviser or fiduciary."  *Id.*, at 1335. In allowing incorporation of the document into SFM's complaint, the Eleventh

Circuit pointed out that "such relationship–forming contracts are central to a plaintiff's claim" in cases such as SFM's and, for that reason, concluded that the district court properly looked to the contract when it dismissed the complaint.  Unlike the case in SFM Holdings, the Schultz' excessive force claim turns on the information specifically known by Tyler Beck when he killed their son and none of the exhibits or declarations supplied by Defendants provide the court with that information.

4.  *Harris v. Ivax Corp.*, 182 F.3d 799 (11th Cir.1999):  Like the *SFM* and *Diaz* cases, the *Harris* case involved a document on which the plaintiffs based their claim. Plaintiffs alleged that Defendant's statements contained within a press release amounted to fraud, without providing the entirety of the text of the press release.   The Eleventh Circuit affirmed incorporation of the full text of the release into the complaint for 12(b)(6) motion purposes because the document itself was central to the complaint when appended by the defense to its motion to dismiss – thus permitting the court to consider the "allegedly fraudulent statement in its context."  *Id.*, at 802, n.2.

5.  *In re ING Groep, N.V. ERISA Litg.*, 749 F.Supp.2d 1338 (2010):  The issue presented was whether – in considering a defense motion to dismiss in a securities fiduciary breach case - the district court could properly take judicial notice of exhibits which, plaintiffs' conceded, addressed generally known

market conditions during the relevant time period.   Because those market conditions were central to plaintiffs' claim and were undisputed, the court took judicial notice of the exhibits.  The Defendants here have not invoked 'judicial notice' as the basis for inclusion of their materials.  And in any event, Plaintiffs have contested, rather than conceded, the centrality of the Defendants' proffered materials and, where appropriate, their authenticity.

## CONCLUSION

None of the authorities cited by the Defendants involve claims that a police officer's use of deadly force could be dismissed – without any discovery into what the officer knew or did not know at the time that he fired his weapon. None of the authorities cited by Defendants permit this court to rely upon the declarations and exhibits presented by Defendants through their Motion to Dismiss.

For and upon the foregoing, the Plaintiffs pray that this Court grant this Motion and disregard the materials filed with Defendants' Motion to Dismiss.

The undersigned, in accord with L.R. 7.1 and 5.1(C) hereby certify that the type font used herein is 13-Point Book Antigua font.

Attorneys for Plaintiffs:

**G. Brian Spears**
Georgia Bar No. 670112
G. BRIAN SPEARS, P.C.
1126 Ponce de Leon Ave., N.E.
Atlanta, Georgia 30306
Phone: (404) 872-7086
Email: Bspears@mindspring.com


**Dianna J. Lee**
Georgia Bar No. 163391
STEWART TRIAL ATTORNEYS
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, GA 30308
1-844-874-2500
dlee@stewarttrial.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 21, 2020, I electronically filed the attached

with the Clerk of Court using the CM/ECF system which will automatically send

email notification of such filing to the following attorneys of record:

Roger A. Chalmers
Laura L. Jones
Senior Assistant Attorney General
State Law Department
40 Capitol Square SW
Atlanta, GA 30334

L. Chris Stewart
Dianna J. Lee
Stewart Trial Attorneys, LLC
55 Ivan Allen Jr. Blvd.
Suite 700
Atlanta, GA 30308

**G. Brian Spears**
Georgia Bar No. 670112
Attorney for Plaintiffs
1126 Ponce de Leon Avenue
Atlanta, GA 30306
Telephone: (404) 872-7086
Email: Bspears@mindspring.com