UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

THE ESTATE OF SCOTT SCHULTZ,  )
et al.,                        )
                               )
      Plaintiffs,            )
                               )
v.                             )          Civil Action File No.
                               )
                               )          1:19-cv-4083-JPB
BOARD OF REGENTS OF THE        )
UNIVERSITY SYSTEM OF GEORGIA,  )
et al.                         )
                               )
      Defendants.            )

## RESPONSE TO MOTION TO DISMISS

I.  Georgia Tech's motion to dismiss raises three issues, two of which are presented

only for the purposes of preserving the issue. The only substantive issue raised—

whether Plaintiffs have pled sufficient facts to show deliberate indifference—

misses the mark. Georgia Tech argues this Court should dismiss the case because

Plaintiffs did not allege the identity of the specific supervisory official whose

deliberate indifference it at issue, but cite no authority showing that is required.

Then, instead of construing the facts alleged in the light most favorable to

Plaintiffs, Georgia Tech argues that Plaintiffs' complaint only alleges negligence rahter than deliberate indifference to the known risk of harm.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must only offer a "short plain statement" of "a plausible claim for relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on a motion to dismiss, a court must accept the facts pleaded in the complaint as true, and construe all facts in the light most favorable to the plaintiff. *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir. 1983). *See also Meyer v. Snyders Lance, Inc.*, No. 4:12-CV-215 CDL, 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012) ("[s]ince *Twombly* was decided, many lawyers have felt compelled to file a motion to dismiss in nearly every case . . . [t]hese motions . . . view every factual allegation as a mere legal conclusion and disparagingly label all attempts to set out the elements of a cause of action as 'bare recitals.'").[1]

---

[1] As shown below, Defendant regularly departs from the standard of review when interpreting the allegations in Plaintiffs' complaint. *See, e.g.*, Doc 45-1 at 16 (arguing the allegations amount to negligence, but not deliberate indifference). These arguments may be appropriate at a later stage of the case, but when all inferences must be drawn in Plaintiffs' favor it is difficult for a defendant to argue a fact-specific issue such as the degree of a defendant's culpability.

## III.   STATEMENT OF FACTS

The facts of this case are set forth in Plaintiffs' Amended Complaint, Doc. 40. Those facts are set forth in detail as relevant to each of the issues raised by Defendant.

## IV.   ARGUMENT AND CITATION OF AUTHORITY

### a.   The Amended Complaint states a valid claim under Title II of the ADA and § 504 of the Rehabilitation Act

#### 1.   *Title II applies to in-the-field encounters of individuals with disabilities*

Georgia Tech acknowledges that binding precedent forecloses its argument that Title II and § 504 do not apply to arrests or in-the-field encounters with police. *See* Doc. 45-1 at 11 (acknowledging that "this Court cannot construe the statutes in a matter that is inconsistent" with *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11th Cir. 2007)). In *Bircoll*, the Eleventh Circuit held that the ADA applies to arrests—notwithstanding differing approaches in other jurisdictions—because the final clause of 42 U.S.C. § 12132 provides a catch-all prohibiting any discrimination by a public entity, regardless of whether it is connected to a "services, programs, or activities." *See Bircoll*, 480 F.3d at 1085.[2] Moreover, while

---

[2] *See Sheehan v. City & Cty. of San Francisco,* 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 191 L. Ed. 2d 856 (2015) (analyzing the cases

3

Plaintiffs' ADA claim involves Schultz's interaction with law enforcement,  the

provision of emergency mental health services to Georgia Tech's students, and law

enforcement's use of force due to an inability to assess whether Schultz posed an

actual threat. The mental health services Georgia Tech tasked its officers with

providing, *see* Doc. 40 ¶ 100 (alleging that Georgia Tech police provided the only

means of responding to a student's immediate mental health crisis), undoubtedly

qualified as "programs, services, or activities"  under the ADA.

Given that binding precedent forecloses the argument, Plaintiffs do not

address it further. *See also Haberle v. Troxell*, 885 F.3d 170, 186 (3d Cir. 2018)

(Greenaway, J., concurring) ("we should be cognizant that no court of appeals has

held that arrests are not 'services, programs, or activities of a public entity,' 42

U.S.C. § 12132, since the Supreme Court decided *[Pa. Dep't of Corr. v.] Yeskey* [,

524 U.S. 206 (1998)] twenty years ago").[3]

_____

in which the "majority of circuits to have addressed the question" found that "Title
II applies to arrests" and citing *Bircoll* as one such case).

    [3] *See also Boynton v. City of Tallahassee*, 650 F. App'x 654, 658 (11th Cir.
2016) (assuming ADA applied to police arrest of diabetic suspect); *Folkerts v. City
of Waverly, Iowa*, 707 F.3d 975, 983 (8th Cir. 2013) (noting simply that "Title II of
the ADA applies to an arrestee's post-Miranda interview"); *Garner v. City of
Ozark*, No. 1:13-CV-90-WKW, 2013 WL 5587921, at *3 (M.D. Ala. Oct. 10,
2013), *rev'd in part*, 587 F. App'x 515 (11th Cir. 2014) (denying motion to dismiss
ADA claim resulting from police arrest of an autistic suspect without analyzing if
ADA applied to arrest); *Soto v. City of N. Miami*, No. CV 17-22090-CIV, 2017 WL

### 2.     *Title II requires public entities to provide reasonable accommodation of a disability*

Georgia Tech next argues it has no legal obligation to provide reasonable accommodations to its students with disabilities because the ADA's implementing regulations exceed their statutory authority. *See* Doc. 45-1 at 11. Again, it raises this argument solely for the purposes of preserving the issue for appeal. It offers no legal authority for this position aside from citing a footnote in *Bircoll*, 480 F.3d at 1082 n.13. That footnote merely noted that none of the parties raised the issue of whether the implementing regulations exceeded the statutory authority. Georgia Tech does not cite the federal regulation it claims is illegal, or describe the legal basis for its argument, and does not even specify whether this argument applies equally to Plaintiffs' claim under § 504 of the Rehabilitation Act.

No court that has adopted Georgia Tech's position. At best, courts have noted that parties have not raised the question. *See Ability Ctr. of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 906 (6th Cir. 2004) (assuming that the reasonable accommodation requirement validly applied to Title II); *Olmstead v. L.C. ex rel.*

---

4685301, at *12 (S.D. Fla. Oct. 17, 2017) (applying ADA to police arrest of autistic suspect).

*Zimring*, 527 U.S. 581, 591 (1999) (noting that the parties did not challenge the validity of Title II's "integration regulation" found in 28 CFR § 35.130(d) (1998)).

Georgia Tech does not provide any meaningful authority or specific argument to explain why this Court should be the first  to hold public entities are not required to provide accommodations under Title II.  Such a holding would have catastrophic consequences for individuals with disabilities, including Georgia Tech's own students.

Given that Georgia Tech has not provided a specific description for the basis of its challenge, and that it raises this issue solely to "preserve it for appeal," Plaintiffs do not address it further.

### 3.   *Plaintiff's complaint plausibly alleges deliberate indifference*

A plaintiff may allege deliberate indifference under the ADA in two different ways:

> [F]irst, by alleging facts suggesting that the existing policies caused a failure to "adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of . . . cognizable harm was so great and so obvious that the risk and the failure . . . to respond will alone support finding deliberate indifference.

*Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018) (citations and quotations omitted).

The second method comports with 28 C.F.R. § 35.105(a), which requires that a public entity evaluate its current services, policies, and practices that do not or may not meet the requirements of the ADA, and if necessary, the public entity shall proceed to make necessary modifications. Likewise, under 28 C.F.R. § 35.130(b)(7), "a public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." In either case, deliberate indifference requires a showing that "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343–44 (11th Cir. 2012). The response taken by officials must be clearly unreasonable in light of the known circumstances." *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010).

A.   *Plaintiffs sufficiently alleged knowledge of substantial risk of harm on behalf of a supervisory official*

The knowledge of the harm must be known to "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the organization's behalf and who has actual knowledge of discrimination in the organization's programs and fails to adequately respond." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135, 1148 (11th Cir. 2014). Proving deliberate indifference of an entity requires showing "the deliberate indifference of 'an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [organization's] behalf [and who] has actual knowledge of discrimination in the [organization's] programs and fails adequately to respond.'" *Liese*, 701 F.3d at 349 (quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 118 S. Ct. 1989, 1999 (1998).

Plaintiffs' amended complaint described a campus in which nearly 10% of the student population reported that they had contemplated suicide. Doc. 40 ¶ 97. Georgia Tech's response to such an alarming degree of suicidal ideation was to offer a total of 2 hours of counseling of any kind to each student *per year*, and students waited an average of 9 days to see a counselor after requesting an appointment even when experiencing a "severe mental health crisis." *Id.* ¶¶ 98, 99.

8

The amended complaint also alleges that "in 2017, Georgia Tech did not have any means of responding to a student's immediate mental health crisis, suicide attempt, or other mental health emergency aside from sending police officers employed by Georgia Tech." *Id.* ¶ 100. In spite of its police being charged with a duty to respond to mental health incidents for students on campus who face higher rates of suicide and mental illness than the general public, and in spite of an overall lack of mental health resources on campus, only 17% of Georgia Tech police officers had received crisis intervention training. *Id.* ¶¶ 101, 103.

The amended complaint further alleges that Georgia Tech employees knew these facts: "Georgia Tech employees who had the authority to require more extensive training of officers employed by Georgia Tech knew of the mental health crisis on the Georgia Tech campus, and knew of the lack of immediate resources for students in the midst of a mental health crisis." Doc. 40 ¶ 102. *See also id.* ¶ 130–32 (alleging officials with the ability to rectify the lack of training knew of the need for officer training). Where the substantial likelihood of harm is obvious, a jury may infer that the defendant had actual knowledge of that substantial risk of harm." *McCullum v. Orlando Reg'l Healthcare Sys., Inc.*, 768 F.3d 1135 (11th Cir. 2014).

These allegations satisfy Plaintiffs' pleading burden. Plaintiffs' obligation is to provide a "short plain statement" of "a plausible claim for relief." *Iqbal*, 556 U.S. at 665. *See also* Fed. R. Civ. P. 8(a)(2). Likewise, under *Twombly*, the factual allegations "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support Plaintiffs' claims. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

Here, Plaintiffs alleged specific facts known to officials within Georgia Tech who had the power to implement a corrective course of action. By alleging knowledge on the part of those with authority to order more extensive training, and who, in addition, had knowledge of the lack of resources for students, and who then responded to that risk by failing to order the required training, Plaintiffs have met their burden to plead a plausible claim. *See also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

Georgia Tech nevertheless argues that to state a claim under the the ADA, a plaintiff must specifically "identify a responsible official who is alleged to have been on notice of discrimination . . . ." Doc. 45-1 at 13. Georgia Tech is correct that

Plaintiffs have not specifically identified a person, or named the position of a supervisory official, inside the Board of Regents administration who is charged with determining whether to provide crisis intervention training to police officers employed by Georgia Tech. But under the pleading standards, there is no obligation to do so.

The cases Georgia Tech relies upon, which it claims hold that a plaintiff must identify the specific official who acted with deliberate indifference, do not actually bear on the issue. First, it relies on *Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1135 (11th Cir. 2019). That case is not relevant here. The issue in *Silberman* is whether bus drivers for a public transportation authority qualified as supervisory officials under the ADA. The court held that bus drivers did not qualify because they did not enjoy have "substantial supervisory authority" within the "chain of command."   In contrast to Schultz's allegations,  "Silberman [did] not allege that …any other managerial employee discriminated against him." Id. at 1135.   *Silberman* has nothing to do with whether a plaintiff is required to specifically identify the name of the supervisory official at issue; it merely held that bus drivers were not supervisory officials.

Second, Georgia Tech relies *Estate of Osorio v. Miami Dade Cty.*, 717 F. App'x 957, 958 (11th Cir. 2018).[4] In *Osorio*, the court affirmed the district court's dismissal of a complaint because it "failed to specify a single official who allegedly had authority to address the alleged discrimination, much less knowledge of and deliberate indifference to the alleged discrimination." *Id.* at 958. The unpublished opinion did not provide any analysis of the underlying complaint. The district court's decision, however, shows that the plaintiff "pled no facts to support the deliberate indifference of the officers or the existence of a Miami-Dade official who had actual knowledge of the police's discrimination of disabled individuals and failed to act accordingly. When the Court rejected the Estate's *Monell* liability arguments in its prior orders, it requested that the Estate amend the complaint to include allegations regarding any officials who allegedly knew of the police's alleged discriminatory conduct. After multiple chances to correct these errors, the Estate has utterly failed to do so." *Estate of Osorio v. Miami-Dade Cty.*, No. 16-20200-CIV, 2017 WL 3721505, at *4 (S.D. Fla. Feb. 10, 2017). Thus, nothing in *Osorio* stands for the proposition that a plaintiff must identify "whom, or under what office, the responsible official might work." *Cf.* Doc. 45-1 at 13–14.

_____

[4] Defendant cited the case using the Lexis citation: *Osorio v. Miami-Dade County*, 2018 U.S. App. LEXIS 8567 (11th Cir. April 2, 2018).

12

Georgia Tech provides no authority for the proposition that the rules of pleading require identification of a specific supervisory official within an organization to state a valid claim. Georgia Tech would place a burden on any plaintiff to pierce the administrative and bureaucratic structure of the Board of Regents to specifically identify the official who was responsible for setting policy. That would be an insurmountable pre-suit obstacle. "[T]he question of how far up the chain of command one must look to find an 'official' is necessarily a fact-intensive inquiry, since an official's role may vary from organization to organization." *Liese*, 701 F.3d at 350.

Georgia Tech's argument contradicts the federal pleading standards which require a setting forth a plausible claim for relief, not every single factual predicate necessary to ultimately prevail in the case.

> B.     *Plaintiffs sufficiently alleged deliberate indifference to the risk of harm*

A plaintiff may allege deliberate indifference by showing "the failure to adequately respond to a pattern of past occurrences of injuries like the plaintiffs, or, second, by alleging facts indicating that she could prove that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d

13

Cir. 2018) (citations and quotations omitted). Deliberate indifference requires a showing that "the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood." *Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 343–44 (11th Cir. 2012). The response taken by officials must be clearly unreasonable in light of the known circumstances." *Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1259 (11th Cir. 2010).[5]

Georgia Tech argues "[t]he most that can be said from the amended complaint's fact allegations regarding 'crisis intervention training' is that GTPD officials could have or should have anticipated, or could have or should have foreseen, that, because of a lack of that training, in interactions with a student in a mental health crisis a GTPD officer might use unreasonable force. But that sort of pleading sounds in negligence, not deliberate indifference." Doc. 45-1 at 16.

This argument is not compelling in the context of a motion to dismiss. The reaction to the known harm by Georgia Tech is a fact-intensive question that will depend on evidence produced during discovery.[6] It is ill-suited for determination at

---

[5] The Eleventh Circuit relies on Title IX cases setting forth the deliberate indifference standard when assessing claims under § 504 and the ADA. *See Liese v. Indian River Cty. Hosp. Dist.*, 701 F.3d 334, 347 (11th Cir. 2012).

[6] Likewise, courts have regularly noted that the reasonableness of an accommodation is simply not appropriate at the motion to dismiss stage. Indeed, *Bircoll* repeatedly stressed that the reasonableness of an accommodation is a

the motion to dismiss stage.[7]

Construing the facts and inferences in Plaintiffs' favor, the amended complaint alleges that Georgia Tech faced a dire mental health crisis among its student body, and that decision makers knew that its campus police were the only means of responding to an immediate mental health crisis. Those same decision makers knew that those police were ill-equipped to handle these emergency situations.

Georgia Tech acknowledges that, under § 1983, failure to train claims can arise when a decision maker knows of a need for training even in absence of prior

─────────────

"highly fact-specific inquiry." *Bircoll*, 480 F.3d at 1085 (quoting *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1527 (11th Cir. 1997) (stating, in a Title I–ADA reasonable accommodation case, that "what is reasonable for each individual employer is a highly fact-specific inquiry that will vary depending on the circumstances and necessities of each employment situation")). This type of inquiry may have been appropriate in Bircoll, where "the Eleventh Circuit had the benefit of a well-developed factual record because that appeal was taken from an order on summary judgment." *Garner v. City of Ozark*, No. 1:13-CV-90-WKW, 2013 WL 5587921, at *3 (M.D. Ala. Oct. 10, 2013), *rev'd in part*, 587 F. App'x 515 (11th Cir. 2014) (declining to dismiss a complaint because "there are insufficient facts for the court to determine whether the procedures followed during [suspect's] arrest could have been reasonably modified to accommodate his disability").

[7] *See Farmer v. Brennan*, 511 U.S. 825, 842 (1994) ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was 'obvious.'").

incidents. For example, *City of Canton v. Harris*, 489 U.S. 378, 387 (1989), noted that a municipality may act with deliberate indifference when it fails to train officers as to the constitutional limitations of the use of deadly force. *Id.* at 390 n.10. As the Court later observed, "[a]rmed police must sometimes make split-second decisions with life-or-death consequences. There is no reason to assume that police academy applicants are familiar with the constitutional constraints on the use of deadly force. And, in the absence of training, there is no way for novice officers to obtain the legal knowledge they require." *Connick v. Thompson*, 563 U.S. 51, 64 (2011). Likewise, in this case there is no reason to suspect that police officers with no prior experience are familiar with the best means to assist a student who is suicidal or otherwise in the midst of a mental health crisis. And given the state of mental healthcare and the health of its student body, Georgia Tech knew that encounters between police and students in need of emergency mental health treatment were inevitable.

Here, Georgia Tech failed to train its officers as to how to respond to a student's mental health crisis, and the facts show that Georgia Tech knew the of the substantial need for such training. The fact that Plaintiffs did not identify previous incidents in which Georgia Tech police shot and killed a student does not foreclose

an ultimate finding of deliberate indifference. Instead, the failure to adopt a policy rises to the level of deliberate indifference "when it is obvious that the likely consequences of not adopting a policy will be a deprivation of civil rights." *Rhyne v. Henderson County*, 973 F.2d 386, 391 (5th Cir.1992).

Other district courts have allowed such claims based on the failure to properly train officers to proceed to trial even in absence of evidence of prior incidents. *See, e.g.*, *Felix v. City of New York*, 344 F. Supp. 3d 644, 666 (S.D.N.Y. 2018) (finding that the plaintiffs "have plausibly alleged that the City failed to train officers with respect to the treatment of individuals with mental illness, including but not limited to implementing Crisis Intervention Training, backup calls, and similar policies"); *Buben v. City of Lone Tree*, No. 08-CV-00127-WYD-MEH, 2010 WL 3894185, at *11 (D. Colo. Sept. 30, 2010) (denying the defendant's motion for summary judgment to where the plaintiff alleged "he was subjected to discrimination in the form of excessive force, which could have been avoided had Defendants been properly trained to recognize and reasonably accommodate individuals exhibiting signs of 'excited delirium,' mental illness or disability").

In arguing to the contrary, Defendant stretches the holding of *Connick v. Thompson*, 563 U.S. 51 (2011), too far. *Connick* held that a district attorney was

17

entitled to rely on training assistant district attorneys received during law school,

continuing legal education classes, and on-the-job training when he assumed that

assistant district attorneys were familiar with their obligations to disclose

exculpatory evidence under *Brady v. Maryland*, 373 U.S. 83, 87, 83 (1963). The

facts of *Connick* bear no similarity to those at issue here. Unlike the ongoing

training provided to assistant district attorneys, Georgia Tech police officers did not

receive training in how to respond to mental health emergencies unless they were

separately provided with crisis intervention training. Doc. 40 ¶ 109.

## V.    CONCLUSION

For the foregoing reasons, Georgia Tech's motion to dismiss should be

denied, and Plaintiffs' claims under the ADA and Rehabilitation Act should

proceed to discovery.

Submitted this 30th day of November, 2020.

**L. Chris Stewart**
L. Chris Stewart
Georgia Bar No. 142289

**Dianna Lee**
Dianna Lee
Georgia Bar No. 142289

Stewart Miller Simmons
55 Ivan Allen Blvd., NW, Suite 700

**Brian Spears**
Brian Spears
Georgia Bar No. 670112

**Jeff Filipovits**
Jeff Filipovits
Georgia Bar No. 825553

Spears & Filipovits, LLC
1126 Ponce de Leon Ave., N.E.

18

Atlanta, GA 30308                    Atlanta, Georgia 30306
(844) 874-2500                       Phone: (404) 872-7086
cstewart@smstrial.com                brian@brianspearslaw.com
dlee@smstrial.com                    jeff@civil-rights.law

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that this motion has been filed electronically via the CM/ECF system which will automatically serve the document on all counsel of record.

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing has been prepared in compliance with Local Rule 5.1(B) in Times New Roman 14-point typeface.

This 30th day of November, 2020.

<u>**Jeff Filipovits**</u>
Georgia Bar No. 825553

Spears & Filipovits, LLC
1126 Ponce de Leon Ave.
Atlanta, GA 30306
678.237.9302
jeff@civil-rights.law