UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE ESTATE OF SCOTT SCHULTZ, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BOARD OF REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA, et al., <br><br> Defendants. | CIVIL ACTION NO. 1:19-CV-04083-JPB |

## ORDER

This matter is before the Court on the Board of Regents of the University System of Georgia's ("Defendant") Motion to Dismiss [Doc. 45]. This Court finds as follows:

## BACKGROUND

This case involves the fatal shooting of Scott Schultz on the campus of the Georgia Institute of Technology ("Georgia Tech"). On September 11, 2019, the Estate of Scott Schultz, William Shultz and Lynne Schultz (collectively, "Plaintiffs") filed their Complaint for Wrongful Death ("Complaint") against Defendant and Tyler Austin Beck, a police officer employed with the Georgia Tech Police Department ("GTPD"). [Doc. 1]. Defendant and Officer Beck moved

to dismiss the Complaint on December 9, 2019.  [Doc. 11].  In ruling on the motion, this Court determined that Plaintiffs' Complaint failed to comply with the pleading requirements contained in the Federal Rules of Civil Procedure.  [Doc. 37].  Specifically, Plaintiffs' Complaint did not clearly specify the causes of actions or identify the elements of the claims.  Id. at 10.  The Complaint also failed to link facts to the elements of the claims asserted.  Id.  Instead of dismissing the Complaint, this Court denied the Motion to Dismiss without prejudice and directed Plaintiffs to file an amended complaint.  Id. at 9.

Plaintiffs timely filed their Amended Complaint on October 1, 2020.  [Doc. 40].  In the Amended Complaint, Plaintiffs allege that at approximately 11:22 p.m. on September 16, 2017, Georgia Tech police officers were investigating a suspicious person report when they approached Schultz, a Georgia Tech student suffering from a mental health crisis.  Id. at 4-5.  During the encounter, Officer Beck fatally shot Schultz.  Id. at 12.

According to Plaintiffs, Georgia Tech officials failed to properly train Officer Beck and other police officers, and had the officers been properly trained, Schultz would not have been killed.  Id. at 16.  Plaintiffs assert that only eighteen of the eighty-nine officers received crisis intervention training, which trains officers in methods to de-escalate a potentially dangerous situation when dealing

with a person undergoing a mental health crisis or engaging in behavior reflective of mental illness.  Id. at 17.  Plaintiffs contend that Georgia Tech officials knew that law enforcement needed to be trained in these techniques because in 2017, nearly 10% of Georgia Tech students reported that they had considered suicide at some point.  Id. at 16.  Moreover, Georgia Tech officials allegedly knew that students were only offered two hours of counseling services and had to wait an average of nine days to see a counselor.  Id.  Ultimately, Plaintiffs allege that Georgia Tech officials "knew that officers lacked training needed to respond to mental health emergencies and that, as a result, officers would use force greater than necessary and detain students in violation of the Fourth Amendment when responding to mental health calls."  Id. at 21.

Based on the facts above, Plaintiffs assert the following causes of action:  (1) Violation of the Fourth Amendment under 42 U.S.C. § 1983; and (2) Violation of the Americans with Disabilities Act ("ADA") and Rehabilitation Act.  Count 1 is asserted against Officer Beck and Count 2 is asserted against Defendant.  On October 29, 2020, Defendant moved to dismiss Count 2.  [Doc. 45].

## LEGAL STANDARD

In evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] the allegations in the complaint as true and

constru[es] them in the light most favorable to the plaintiff." <u>Traylor v. P'ship Title Co., LLC</u>, 491 F. App'x 988, 989 (11th Cir. 2012).  Federal Rule of Civil Procedure 8(a)(2) provides that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although detailed factual allegations are not necessarily required, the pleading must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).  Importantly, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Id.</u> (citation omitted).  At bottom, the complaint must contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" (<u>id.</u>) and must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Traylor</u>, 491 F. App'x at 990 (quoting <u>Iqbal</u>, 556 U.S. at 678).

## ANALYSIS

In Count 2 of the Amended Complaint, Plaintiffs assert that Defendant violated the ADA and the Rehabilitation Act by failing to train Georgia Tech police officers on how to respond to a student's mental health crisis.  Title II of the ADA prohibits public entities from excluding from participation, denying benefits to or discriminating against individuals with disabilities by reason of those

disabilities. 42 U.S.C. § 12132. The Rehabilitation Act imposes parallel restrictions on local governments and entities that receive federal financial assistance. 29 U.S.C. § 794. A plaintiff alleging discrimination under either the ADA or the Rehabilitation Act must show:

> (1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability.

Bircoll v. Miami-Dade Cnty., 480 F.3d 1072, 1083 (11th Cir. 2007).

Where a plaintiff seeks compensatory damages, as is the case here, the plaintiff "must clear an additional hurdle" and show that the entity engaged in intentional discrimination. Silberman v. Miami Dade Transit, 927 F.3d 1123, 1134 (11th Cir. 2019). Stated another way, "a plaintiff must show that a defendant violated his rights under the statutes and did so with discriminatory intent." McCullum v. Orlando Reg'l Healthcare Sys., Inc., 768 F.3d 1135, 1146-47 (11th Cir. 2014). "A plaintiff may prove discriminatory intent by showing that a defendant was deliberately indifferent to his statutory rights." Id. Deliberate indifference is an "exacting standard." Silberman, 927 F.3d at 1134. "It requires proof that 'the defendant knew that harm to a federally protected right was substantially likely and . . . failed to act on that likelihood.'" Id.

5

To hold a government entity liable, a plaintiff must also show that an "official" had actual knowledge of discrimination in the entity's programs and failed to adequately respond. Id. At a minimum, the official must have had the authority to address the alleged discrimination and to institute corrective measures on the entity's behalf. Id. The purpose of this rule is to "ensure that an entity is only liable for the deliberate indifference of someone whose actions can fairly be said to represent the actions of the organization." Liese v. Indian River Hosp. Dist., 701 F.3d 334, 350 (11th Cir. 2012).

> The question of how far up the chain of command one must look to find an "official" is necessarily a fact-intensive inquiry, since an official's role may vary from organization to organization. In the [ADA or the Rehabilitation Act] context, we conclude that an official is someone who enjoys substantial supervisory authority within an organization's chain of command so that, when dealing with the complainant, the official had complete discretion at a "key decision point" in the administrative process. The "key decision point" language reflects the practical reality that, while some decisions are technically subject to review by a higher authority, such a review is not part of the entity's ordinary decision-making process.

Id. (internal citations omitted).

Defendant argues that dismissal is required because: (1) Plaintiffs failed to identify a responsible official who knew that discrimination had taken place and was in a position to do something about it; and (2) Plaintiffs failed to identify other

6

similar acts of discrimination which would show knowledge on behalf of Defendant. Each argument is discussed below.

As to whether Plaintiffs have identified a responsible official who knew of the discrimination, Plaintiffs admit that they have not. Without citing to any cases, Plaintiffs contend that they are not required to identify the responsible official because it would place a burden on them "to pierce the administrative and bureaucratic structure of the Board of Regents to specifically identify the official who was responsible for setting policy." [Doc. 48, p. 13]. According to Plaintiffs, identifying an official "would be an insurmountable pre-suit obstacle." Id.

In this case, Plaintiffs have pled no facts to support the existence of a Georgia Tech official, either within the GTPD or in another position of leadership, who had actual knowledge of the police's discrimination of disabled individuals and failed to act accordingly. Plaintiffs' allegations generically refer to an "official" who knew students suffered from mental health issues and did not receive needed treatment on a routine basis. Plaintiffs' allegations also generically refer to an "employee" who had the authority to require more training of police officers. These allegations are completely conclusory as they do not identify the job responsibilities of the individuals or how the individuals obtained their knowledge. Significantly, this Court disagrees that the pleading requirement

7

identified in Liese creates an "insurmountable pre-suit obstacle." The Eleventh Circuit Court of Appeals has made clear that "the mere incantation of 'official'-ness" does not entitle a plaintiff to discovery. Silberman, 927 F.3d at 1136. Because Plaintiffs have failed to identify any official with the requisite knowledge or ability to change policy, dismissal is appropriate. See Osorio v. Miami Dade Cnty., 717 F. App'x 957, 958 (2018) (upholding dismissal of complaint where complaint failed to identify a specific official).

Even if Plaintiffs' conclusory allegations that an unidentified official knew of the need for crisis intervention training and failed to act was sufficient, Plaintiffs' Amended Complaint is still subject to dismissal because Plaintiffs have not pled sufficient facts to show deliberate indifference. In the failure to train context, the

> [f]ailure to train can amount to deliberate indifference when the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right.

Belcher v. City of Foley, 30 F.3d 1390, 1397-98 (11th Cir. 1994) (internal citations omitted). As a general rule, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick v. Thompson, 563 U.S. 51,

8

62 (2011).  Importantly, where a claim turns on a failure to train, an organization's liability "is at its most tenuous."  Id. at 61.

In this case, Plaintiffs admit that they have not presented any allegations which show a pattern of similar constitutional violations involving police officers and Georgia Tech students experiencing mental health issues which would put officials on notice of a need for further training.  Plaintiffs thus argue that the fatal shooting in this case was the "obvious" consequence of failing to provide crisis intervention training to many of the Georgia Tech police officers.  This Court recognizes that the Supreme Court of the United States has held that "in a narrow range of circumstances," a pattern of similar violations may not be necessary to show deliberate indifference.  Id. at 63.

> The [Supreme] Court posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force.  Given the known frequency with which police attempt to arrest fleeing felons and the "predictability that an officer lacking specific tools to handle that situation will violate citizens' rights," the Court theorized that a city's decision not to train the officers about constitutional limits on the use of deadly force could reflect the city's deliberate indifference to the "highly predictable consequence," namely, violations of constitutional rights.

Id. at 63-64 (internal citations omitted).

This Court finds that Plaintiffs have not presented allegations that plausibly show that the need for crisis intervention training was "obvious" or that this alleged constitutional violation was a "highly predictable consequence."  Here, Plaintiffs presented no allegations as to how often Georgia Tech police officers respond to students in mental distress.  Although Plaintiffs indicated that 10% of students reported suicidal thoughts, Plaintiffs failed to link that statistic in any meaningful manner to law enforcement.  In this Court's view, Defendant's failure to provide the Georgia Tech police officers with crisis intervention training does not fall within the narrow range of the Supreme Court's hypothesized single-incident liability.  In this case, Plaintiffs have not alleged that the officers were untrained in the use of deadly force or other police procedures.  Instead, Plaintiffs insist that the officers were missing a very specific and narrow type of training.  In sum, Plaintiffs' allegations that the Georgia Tech police officers were inadequately trained fall "far short of the kind of 'obvious' need for training that would support a finding of deliberate indifference to constitutional rights on the part of" Defendant.  See City of Canton v. Harris, 489 U.S. 378, 397 (1989) (O'Connor, J., concurring); see also Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1329 (11th Cir. 2015) (dismissing an action where the complaint did not allege that the need for specialized training on the use of force when dealing with

mentally ill citizens was "so obvious" that the failure to provide such training amounted to deliberate indifference).

In sum, this Court is persuaded by Defendant's arguments that Plaintiffs' Amended Complaint fails to state a claim. Plaintiffs did not identify a responsible official who knew of the discrimination and had the authority to correct it. Moreover, Plaintiffs did not adequately plead that Defendant acted with deliberate indifference to the risk of an ADA or Rehabilitation Act violation. Ultimately, apart from conclusory language and without a history of other discriminatory acts, Plaintiffs do not establish that Defendant knew that harm to a federally protected right was substantially likely and failed to act on that likelihood. As such, Plaintiffs have failed to state a claim under either the ADA or the Rehabilitation Act, and therefore Count 2 is dismissed.

## CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss [Doc. 45] is **GRANTED**.[1]  **IT IS HEREBY ORDERED** that Count 2 is **DISMISSED**.

**SO ORDERED** this 10th day of August, 2021.

J. P. BOULEE
United States District Judge

---

[1] The Motion to Stay Discovery [Doc. 46] is **DENIED** as moot.